Thank you, Your Honors. Your Honors, Mark Scheer from Scheer & Zender representing North Pacific Insurance Company, and I understand we have 20 minutes. I would like to reserve 5 minutes for rebuttal, please. You have 20 minutes, but you don't have to use it all. We may not need to. Thank you, Your Honor. I'd like to frame the issue to start off with, and I know you've read the materials, and we've got good briefs from both sides to review and have a command of the facts, and I also can't help but notice that it's your second case. We were very proud of our ability to group cases on calendars that raised similar matters, but we did not deliberately group talents together. I was thinking to myself that we know we're in the Ninth Circuit, don't we? With that, to frame the issues, Your Honors, the two questions that I put before you that I think are squarely before you are, did this occurrence arise out of the use of an automobile? That's the first question. And if it did, then it's excluded under the North Pacific policy. The second question is, did this accident happen during the process of unloading the cattle and, therefore, would be excluded under the exclusion to the North Pacific Farm Liability Policy? And, Your Honors, if we're intellectually honest about this today, and if we apply the undisputed facts of this accident to the clear language of the policy, I think the answer is very clear that there's no coverage, and Judge Whaley's decision should be approved. Did Mr. Kelly, at his deposition, admit that this accident occurred during the unloading process? I believe Mr. Kelly did, Your Honor. There was an objection to the form of the question as being vague and ambiguous. But he admitted it, and I think the excerpt of record at 50 points out in his deposition, he does admit, in fact, that this was during the process of unloading. Well, but isn't that a legal determination under the policy where there is a specific definition of the term unloading? I do agree with you, Your Honor. I'm answering the judge's question. Mr. Kelly admitted it. But I have to point out, and I think we even briefed this, even if he said he didn't think this was the unloading process, I have to admit I think that would be irrelevant. Well, shouldn't the objection that was stated at the deposition be sustained as to the form of the question? Right. Because it calls for a legal conclusion. I think that's probably right to the extent that on the evidence we're talking about. All right. Well, assuming we can get past the meaning of the term unloading, I would just like to know, under this policy, suppose that a cow had broken loose from its pasture and injured somebody walking next to the field. Wouldn't it be reasonable for the farm owner to assume that the bodily injuries would be covered under those circumstances? Your Honor, I'm thinking of that circumstance. It is covered. That's what is covered. So why is it so unreasonable for the insured to think in this case that if the cow gets loose at the stockyard and injures somebody on the grounds that those bodily injuries would not be covered under the farm policy? Because, Your Honor, under the clear definition of the exclusion in the North Pacific policy, it's not an auto policy. And it doesn't cover accidents or occurrences arising out of the use of an auto. But the injury didn't have anything to do with the automobile. The cow had been running around in the stockyard for several minutes while people were trying to corral it when it ran over Mr. Porter. The point, Your Honor, it had never been unloaded. That's exactly right. Well, that's what you say. Suppose we put it on the other end of this. Sure. That they're still on the farm, and they've got the cows all over the farm, and they're trying to get the cows together so that they can put them on the truck. And one of the cows gets agitated and hurts somebody. Now, they're in the pasture or a long way away. In a broad sense, this is part of the loading of the truck because they're trying to get the cows together. Now, that would be covered, wouldn't it? That's a tougher call because that's a loading question. And I'm not sure. I haven't really thought about that one. I'm more thinking. Well, I have. And it seems to me that this is just unloading on the other end. To the extent that the automobile or the trailer, and we all understand the trailer is part of the automobile by definition of the policy. But to the extent that the trailer was in use, and they were, for example, being loaded onto the trailer, then, Your Honor, I believe it would be excluded. To the extent that it wasn't in use, say they're moving it from the pasture to the holding pen, and eventually they plan to put it on the trailer, I would say that's not excluded. The truck is there and ready to go? But that's not part of the loading process. But how is that different from the positioning of the ice cream truck in the Oakley case too close to the third baseline? I'm glad you asked because I think the Oakley case supports our position, Your Honor. In that case, a couple of things happened. First of all, the truck was not in use or movement. It was in use in the sense that they were selling the ice cream product. But it just happened to be the sidest of the action. It just happened to be parked. But the trailer here was doing nothing more than substituting for a holding pen fence. No, Your Honor, that's the distinction I think that's important here. They backed the trailer up to the pen, and this is undisputed. This is undisputed in the excerpt of the record. And there was a gap. That's exactly it. In fact, while the heifer was running around loose, you'll recall Mr. Kelly got back and tried to position the trailer again to corral it to where it was intended to be delivered, finally delivered. And that's the key point. We are still in the process of unloading at the time this accident happened. May I ask you, was there any contract between Kelly and the stockyard which spelled out the place where finally delivered? Was there any contract in the evidence? I'm not aware of any, Your Honor. I know there's a discussion at the trial court level. Judge Whaley brought up the issue of a transfer of the right to possess that cattle. And there is evidence on both sides whether the place where the truck stopped was in the chute or not in the chute 2 1⁄2 to 3 feet away. Right. Could a reasonable person determine that the place finally delivered, meant by the policy, is where the cattle had to be delivered, inside the chute, not outside the chute? I think that's a very reasonable interpretation. Because why would the policy say that place where it is finally to be delivered, as opposed to delivered? Now, that's a key distinction. And I ask you to think about that. So reasonable people could dispute the place finally delivered as whether on the Henderson stockyard premises, where the hoofs first hit the ground, or hit the ground, No, I don't. whether the finally delivered means in the chute. Your Honor, I think keen lawyering and keen artistic briefing can debate that point and try to create an ambiguity. Is it an individual fact to be found by the jury as to what was the expressed objective intent of the parties? Well, I suppose you could look at it that way. But I don't think so, because I think there's undisputed facts. And you don't want a reversal? I do want the reversal. Absolutely. I think it should be reversed and remanded for entry of summary judgment in favor of North Pacific, Your Honor. Yeah, you don't want a trial on this. No. Well, I don't mind the trial on an issue if there was one. But I have to be candid. I don't think there is one here. The facts are undisputed. The policy language is clear. This case, unlike the other. I mean, that's the question, though. Whether the term unloading is defined in the policy to mean to be finally delivered is ambiguous. Well, if you look It's a matter of law. I understand that. And I And if we decide it is ambiguous, then there may very well be a factual issue that, as Judge Mayo points out, that must be determined. But if you don't want a trial, are you making a judicial admission that you don't think there's a triable issue of fact as to the reasonable meaning of the term finally delivered? I think that term can be interpreted in several different ways. But as a matter of law, Your Honor, I think you can apply it to these facts to reverse the judgment and enter summary judgment in favor of North Pacific. And here's why. Any The plaintiff, the insured, is always going to come in and say one definition of where they think the place to finally be delivered is. The reason the cases are out there on this court You'd rather have a reversal for a trial than an affirmative. Yes, Your Honor. Yes, that would be preferable. But, Your Honor, I think we have to be clear about it. I think we have the basis for reversal and remand for entry of summary judgment in favor of North Pacific. The reason I say that, Your Honor, if you look at the other unloading cases, when the courts find that it's ambiguous, in most of those instances, it's when the definition of unloading is not defined. Now, this case, in fact, the Washington cases, the loading provision wasn't defined. And you saw a lot of artistic glory in saying, well, it applies to occurrences Suppose the cow had broken out of the trailer en route to the stockyard and injured somebody along the hike. Yes. Would that be covered under this policy? No, it would not, Your Honor. That's during the process of unloading or loading. It would not be covered. I'm sorry. If it's not within the process of loading and unloading, that would be through the use of an automobile. So it would be excluded under the automobile use provision, but not under the loading and unloading. We have both here. That's the distinction. Your Honor, I want to jump ahead. I've skipped a bit. But I think it's fairly important. I'd like to characterize it this way. And I'm going to quote B&L Trucking. Let's take a fair, reasonable, and sensible construction. This is B&L Trucking. As we've given to the contract by the average person purchasing insurance. Now I want to give you the common sense test here. Here's one description of the accident. And I'll let you pick which one you think applies using, again, B&L Trucking, fair, reasonable, and sensible construction as an average person would. Here's description number one. After the cattle were unloaded from the trailer, two of them escaped. That's one description. The second description is, quote, I'm going to quote it myself because it's from our brief. While the cattle were being unloaded from the trailer, two of them escaped. I think the way I've described it clearly number two applies. The cattle were still ñ there were still cattle on the trailer. Five of them got to where they meant to be delivered finally. Two of them did not. They escaped in process. So the trailer was empty at that point. At the time that the two escaped, yes. Then there were no ñ my understanding is there's no cattle in the record. It's clear there's no cattle still in the trailer. The testimony of Kelly was that you didn't know whether these were the last two or two in the middle or somewhere in between. I stand corrected, and I apologize. It could be there were more. Again, I don't think that's germane or dispositive of the issue. But if that's the case, so be it. Let me tell you why I give you this characterization of the two descriptions. Because Kelly goes out of their way in their brief at page 11 to describe scenario number one and says, quote, Now I'm quoting from their brief, page 11. After the cattle were unloading from the trailer onto the stockyard premises, two of the cattle escaped. Your Honor, I suggest that no reasonable person would describe it that way. Well, the district court thought it was reasonable. I mean, he said as soon as the hooves touched the ground, they're unloaded. And there's no dispute that the hooves had touched the ground. In fact, they were touching the ground for, you know, up to ñ  Yeah, for 12 minutes. That is true, Your Honor. All right, let me give you another hypothetical then and show you how I think that's a ridiculous interpretation and not fair to the policy and to the common person's understanding of the facts. If you were delivering potted plants, for example, out of a truck, and your charge as that delivery person was to take them off the back of the truck and deliver them to the loading dock, all right? If you take that potted plant and toss it out, is it delivered as soon as it hits the ground and explodes and causes an injury? I think not. I like the hypothet of page 17 of your brief about a lot better unloading the cattle in the parking lot of the Hermiston Livestock Yard. They hit the ground there too. Exactly. If Mr. Kelly just backed it up and dumped them off on the premises of the Hermiston Livestock Yard, would that be appropriate? But I have even better than that. And I want to refer you to the Agway case. What if you just connected the trailer, handed the guy the paperwork, and said, have a nice day, and drove away? They're not unloaded. And they're in the trailer. And that's where I think the trial court tripped up on this, Your Honor. I think we're confusing possession and right to possession with loading and unloading. Well, but we have cargo cases that turn on possession as a bill of lading in terms of determining who has ownership and control over the car. It does, but, Your Honor, this case is not about who owned those cattle at this point or who had the risk of loss, like Judge Whaley asked, if one of them died. This case, the question is, was this during the process of loading and unloading? That's what the policy says. It doesn't say – But loading and unloading must have temporal limits. There must be a beginning to the unloading process and an end to the process. And the question that we're wrestling with here is when did unloading cease? And I hear you arguing that it doesn't cease until all of the cattle are safely confined within the holding pen on the Hermiston Stockyard property. The district court thought that it meant as soon as the hooves touched the ground. Right. And the question is, is the term ambiguous? And I don't see how it isn't, given the fact that those are both reasonable understandings of what the term unloading means. So that would give us a neutral on that term or on the definition of that fact, but I don't think you need to go there because – But if – the potted plant example, it's not that it hits somebody when it gets thrown. It's if it's already off the truck. And that's the problem that we have. So the analogy isn't quite correct. Well, yes, but under the definition we've been given of the hooves hitting the ground, as soon as that potted plant hits the ground, if it doesn't hit someone, it hits the ground and then explodes. Take it off. They take it off and put it on the ground. But, Your Honor, in the potato case, the Woodside case we cite, they drop it off at the loading dock. They leave it in the wrong place. And the court says since you didn't put it in the right place, it's still in the loading and unloading process. And, Your Honor, it's the Agway case in the Third Circuit. Though I realize the Third Circuit says it's not presidential, you can't get a case more on point. In law school, we used to talk about going and finding that purple cow case. I hate the pun, but here it's almost like that. I don't know what color the steer was. But if the rule says that we can't look at the cow at all to determine what color it is, because it's not presidential, then so what? Well, I think what the Third Circuit says. If you look at the logic of the Third Circuit, it still applies here. And, Your Honor, the thing I think is important there is it's a farm. Can you talk about your second ground, the use of the automobile? It's a farm, if I can finish. I'm sorry, Your Honor. The farm liability policy in Agway and a lot longer time period between unloading. And I'm sorry, Your Honor, I'm out of time. If I could address that during rebuttal, I see that I'm into my rebuttal time. Thank you. May it please the Court, I am Dan Huntington, and I represent the Kellys in this appeal. North Pacific's farm liability policy does not exclude Mr. Porter's injury in this case because the injury did not occur during unloading, as the term unloading is specifically defined in North Pacific's policy. May I ask you on that point, if unloading means, under the terms of the policy, property is moved to the place where it's finally delivered, keep that thought in mind, that's the definition, and witness Bruce Perkins in his deposition at ER 55, testifies that the yard man was telling Kelly, sir, you're going to have to get closer. You're not close enough. Why is that not evidence that the property was not at the place where it was to be finally delivered? Your Honor, it may well be evidence. Then there's a question of fact. No, Your Honor. There's not a question of fact as to whether it was finally delivered or not. No. His testimony is the cows were not finally delivered because the trailer was not close enough to the chute to deliver it. Your Honor, we have a dispute, a potential dispute, on whether when the cows' hooves hit the ground at the stockyard they were loaded. That's an assertion. I understand. And the other side is whether they're not finally delivered until they're loaded into the pen. Or in the chute on the loading pen. If you don't know the place of final delivery, if it could be, as Judge Whaley said, when their hooves hit the ground at the stockyard, or if it could be in the chute, you have an ambiguity. But he specifically found that the term was not ambiguous. It was subject to interpretation. Now, what aids do we have to interpret it other than custom and practice, perhaps a contract between the buyer and seller of the animals? We don't have a contract between the buyer and seller of the animals telling us where a place finally delivered is. We do have custom and practice. And on custom and practice, we have conflicting testimony. We have the testimony which I just read you of Bruce Perkins, and then we have the testimony of James Brooks, who said it was not uncommon to stop a trailer 2 1⁄2 to 3 feet from the chute. So we have conflicting testimony as to custom and practice, which is used to interpret the term finally delivered. Now, is that not an issue? Your Honor, we have Judge Whaley's opinion, which also says in the alternative the use of the term the place where it is finally delivered is not helpful. Well, that may be dicta. It's not dicta. It's a basis for his opinion, Your Honor. He said in the alternative there could be an ambiguity here because this terminology is not helpful. We have to interpret it, but there is an ambiguity, and I interpret it this way. Okay. Your Honor, let me explain as I was trying to open, talking about the word unloading as defined in the policy. If you look at that definition, you will determine that in this case, it doesn't matter if the cow was finally delivered. I mean, if it was finally delivered, okay, the exclusion doesn't apply. But if there was an interruption in the delivery, then the exclusion doesn't apply either. Look at the specific definition of unloading. It says handling property, in this case handling cows, while they are being moved from the trailer to the place of final delivery. There's a temporal requirement in there that is not met by the facts in this case. In this case, Mr. Porter was not injured while these cows were being handled. Mr. Porter was not injured while these cows were being moved from the trailer to the place of final delivery. Rather, Mr. Porter was injured three to five minutes after these cows had unloaded, had run loose throughout the stockyard premises. Is this one of those exceptions, which I'm sorry, since I have wonderful word arising from? Your Honor, you're leading me right through my outline. Okay. In McDonald Industries v. Rollins, the case that I discussed in the appellee's brief at page 20 to 24, that was the case where they loaded a large counterweight on a trailer and improperly loaded it, broke the law in not applying enough chains, loaded it, then driving down the highway sometime later, the counterweight fell off the truck and caused a collision with the following vehicle. The policy in that case had an exclusion for liability arising out of loading or unloading. The Supreme Court of Washington described the reason they accepted review in that case specifically as they said, we are accepting review to determine whether an exclusion for liability arising out of loading or unloading excludes an accident that resulted from improper loading. And the court's answer to that was no, it doesn't. The reason the court ruled that way in that case was because they found loading and unloading were ambiguous. They said it could have multiple meanings. It could mean only liability arising from the conduct while loading, or it could mean resulting from an accident. So if the counterweight had rolled off while it was being loaded, the exclusion might apply. It certainly might. If it hit somebody right then. Right. And if it rolled down the hill and kept rolling and rolling and rolling and rolling for a while and then finally hit somebody, the exclusion wouldn't apply. Well, perhaps under the language in that case, Your Honor, but go back to the definition of unloading in our case. There's a temporal requirement. The exclusion is while the cows are being moved from the trailer to the place of final delivery.  Could you help me? What did happen here? What did happen? The cows unloaded. This cow is off the truck? Yes, Your Honor. Unloaded off the truck, ran throughout the areas of the Hermiston stockyard that were open to public access, ran throughout there for three to five minutes, ran down an alley. Someone tried to trap the cow there. It got back out, ran behind the truck that it had come out from, ran back out, and ran over Mr. Porter. Okay. And that's my point, Your Honor. That description of how Mr. Porter got injured is not within the terms of the unloading definition in this policy, is not while the cow is being moved from the trailer to the place of final delivery. It's the holding panel. And that gets back to Judge Bea's earlier question that had he backed the truck and trailer further, as the stockyard employee told Mr. Kelf to do, then the cow could not have broken free during the unloading process because it would only have been able to go into the holding panel. What? I'm sorry, Your Honor. It's the question. I mean, you're arguing that this did not occur during the unloading process, but that is true unless we find that the place of final delivery is actually the holding panel, which is one of the grounds that the district court said. Your Honor, even if you were to find that the place of final delivery was the holding panel, which I contend and the district court contends is at best an ambiguity, but even if you were to find that, this accident did not happen while that cow was being moved from the trailer to that holding panel. Sure it did. No, it didn't. This happened. The delivery was either over or suspended. What was going on at the time of this accident was the escape and the attempt to recapture. The delivery is when the hoof hit. What was the negligence? What was the negligence here? There were multiple allegations of negligence, Your Honor. One was the positioning of the vehicle. Another was the delivery of wild cattle without warning the stockyard that these were not domesticated cattle. Another was failure to warn the people, such as Mr. Porter, after this cow escaped and was running around for three to five minutes. Well, the district court says ultimately the question this court must answer is whether the average person purchasing insurance would believe that he or she assumed the risk of an injury caused by negligence in corralling a wild heifer under a farm liability policy where the policy excluded coverage for loading and unloading of vehicles. So you would agree with that? Yes, Your Honor. Well, he seems to think that he treats the negligence as being the failure to catch it. Catch it to warn the people. Your Honor, back to your point. I want to get back to that because that really bothers me that I might not be communicating here. Well, maybe I'm misunderstanding your point. Well, that's what I'm concerned about. Under the interpretation that North Pacific wants, and I think that it might be understood in your question, under that interpretation you would say if this cow unloaded from this trailer, escaped as it did, was gone off into the woods for three hours, stepped out onto the freeway and caused an accident, that would be excluded under the policy. Clearly there has to be some temporal limitation, but I'm troubled by the reasoning in, I guess it's the McDonald Industries case, where the Washington Supreme Court said the failure to properly secure the counterweight on the trailer, which was the negligent cause of the counterweight falling off the trailer while the truck was in motion, did not constitute loading or unloading under the policy. And if that's the case, then why wouldn't the same rationale apply that the unloading here was not complete until the load got moved from the trailer to the place of final delivery, if it is the holding that is the place of final delivery? Your Honor, I'm repeating myself, but maybe it's because I can't effectively get this point across. Even if delivery wasn't completed, under the terms of this unloading exclusion in the policy, the exclusion applies only while the cow is being moved from the trailer to the place of final delivery. Nobody was moving this cow at the time of the accident. We were trying to get the cow back in the chute. The cow was escaped. To the place finally delivered. The cow was escaped. It was gone. They were trying to recapture it. You're trying to argue an intervening cause or proximate cause argument. Could you please address the overall exception about use of an automobile? What's wrong with that? What's wrong with that? Mr. Porter's first allegation of negligence as to Kelly was that Kelly didn't back the truck trailer close enough to the chute and thereby negligently allowed the cattle to escape. That's the first allegation as to Kelly. Why isn't that? And I'll talk to you about Jerome in a moment. About what? About the Jerome case in a moment. Why isn't that an allegation that the negligence of Kelly in the use of his trailer, which is an automobile, was in whole and in part a substantial factor in causation? The use of the trailer in this case and what North Pacific says is the use of the trailer was the positioning of it, leaving a gap of 2 to 2 1⁄2 feet between it and the chute. The Handley v. Oakley case dealt with the identical issue. That was the case where there was an ice cream truck positioned near the third baseline at a baseball game, and people were lined up to buy ice cream out of the truck, and a foul ball hit a young man in the head and caused an injury. There was a liability policy on the truck that covered accidents arising from the use of the vehicle. The court in that case said no coverage. Positioning the truck as the alleged negligent act in Handley is not a use of the truck. Was it negligent for the truck to be in that location? It was. Well, I mean, that was the allegation of the claim, and it's no different in this case. But, Your Honor, in addition, the other thing in this case, the only possible or arguable use of this trailer in the involvement of the accident, the only arguable use of the trailer was unloading, and we have in this policy a definition of unloading. The only argument is that the specific overcomes the general. The argument against that is each part of the contract has to be given validity. No, Your Honor, if the only arguable use of the trailer in this case was unloading, then we should be limited to determining this case on whether that exclusion applies or not. North Pacific shouldn't be able to argue, well, even if we don't come under unloading, we have an exclusion for the use of the vehicle, and it was being used for unloading. If this were the vehicle policy. Excuse me? If this were the vehicle policy, if we had coverage for the use of the vehicle, including loading and unloading, the position of the insurance company in that case would be this had nothing to do with the unloading, I would suppose. You've already gotten the policy limits from the automobile. Your Honor, I would not have been confident if we had to go to court and argue coverage under the automobile policy. Under the case law in Washington on arising out of the use of the vehicle, the Culp case, the case I just referred to, it would have been a difficult argument to say that this accident arose out of use of the vehicle. But you got the policy. We didn't go to court. We didn't get a court determination. They just paid you the money and said go after the bigger insurance. Pardon? They paid you the $100,000 and said go after the bigger million dollar policy. They did, but there's no legal determination in this case. And that policy, the auto policy in this case does not mirror the commercial general liability policy in this case. The description of what was covered under the use in the auto policy was just this covers liability arising out of the use of the vehicle. It didn't say anything about loading or unloading. Finally, North Pacific refers to the Agway case as their purple cow case. I would contend that that case is not on all fours with what we're dealing with here. That case is a good example of what North Pacific wishes their policy said. In the Agway decision, the court describes the exclusion of coverage in that case as excluding accidents resulting from loading and unloading. That's not what North Pacific's exclusion in our case says. And following the McDonald Industries decision where our Supreme Court basically gave a road map to insurance companies, they said look, the undefined term loading and unloading can mean a multiple of things. It can mean just activities while loading or it could mean results from loading. The companies can write a policy as they did in Agway excluding liability resulting from loading and unloading. That wasn't done in North Pacific's policy. It's the policy they wish they had, not the policy they have. Thank you. Thank you. Thank you. I'd like to address that last question first on the auto policy. Very important point. The decision you make today or the decision you eventually make on this case is going to be applied in auto liability policies. Now, it's one of two things. It was either loading. Wait, wait, wait. Let's go back to the question I asked you about supposedly cow that had fallen off during the transit. And you said, well, that wouldn't have been covered under the automobile law. I'm not sure about that. It would have been covered under your policy, wouldn't it? I think it would. Yes, Your Honor. Yes. Okay. If I misstated that. No, I don't think I asked you to clarify your answer. The reason I go back to that first point, Your Honors, is that it's either unloading or it's not. Auto policies cover use of auto and loading and unloading. This farm policy obviously intended to not cover auto use and loading and unloading. So if it's unloading, it's covered under the auto policy. If it's not unloading, it's covered under the farm policy. They're meant to be mutually exclusive. It's kind of a Venn diagram. So if we decide, if the court decides for some reason, as the trial court judge did here, that this is a matter of law was not unloading or in the process of unloading, then the auto liability policy would come in and say, therefore, we don't cover it. There's a broader application is what I'm getting at. And you'll see that in a lot of the unloading cases that we've cited and referred to, one common theme in the cases where they say that it's ambiguous is the term is not defined. In this case, the term was defined. In fact, it was specifically defined. Nobody could have argued it. Well, except it's specifically defined with the phrase finally delivered, and the phrase finally delivered is not defined. No, and I understand that, and I'm glad I had a few moments to reflect, because now I think I understand better the question that the judge asked before, Your Honor, about is that a question of fact. It may be under certain circumstances, in which case that's what you should do, is reverse remand for a trial on the issue of let a jury determine was this finally delivered. Your Honor, that would be an acceptable result, but I think I'd get further than that. I think you should reverse and remand because I don't think reasonable people could differ on whether the loading process had concluded. It had not. And if you look at Agway, the court decided that as a rule of law, but that was the loading process 40 minutes went by before that steer hit a car, only three to four, and everybody's trying to get it to where it was meant to be finally delivered. Can reasonable minds differ on where that heifer was intended to be finally delivered? Well, I don't think so. It was intended to be delivered to the stockyard. It got to the stockyard. It got papered at the stockyard. It just didn't go into the holding gallery. Why was Kelly chasing it then? Why was Mr. Kelly chasing it then if it was where it was finally intended to be delivered? Because a loose cow in the stockyard is a problem. It's dangerous. It could hurt people. And gives rise to liability for exactly the situation here. Loose cows are one of the things that you are ensuring a risk that your policy is supposed to ensure against. Loose cow but not in the process of loading and unloading, Your Honor. Loose cows on the farm or in transit. That's right. Now think about it, Your Honors. If the fence breaks on the farm and the cow gets loose and goes and hits the car, now that's covered. That's what a farm liability policy is for. But when it's loading and unloading or rises out of the use of the automobile, I suggest, Your Honor, the policy specifically excluded that. But you're not limiting the scope of the coverage to the boundaries of the farm. It does extend beyond the ranch land. I agree with that. But that's not in dispute, Your Honor. And, again, I know that there's some discount of Agway, but I think it's directly on point. You can't find a case more on point with the sphere, the temporal relationship that you referred to, Your Honor, is even greater in the Agway case. I'm afraid, Wayne, you're going to have a much better argument with the new rule. Yeah. Well, although, as I understand it, I don't believe I violated any rule in the Ninth Circuit by citing it. Can you tell us why Hanley versus Oakley, the ice cream truck case, doesn't get rid of your use exception? Well, I'll tell you this about the Hanley case. It's not a loading case. It's a rising out of the use case. And the reason. Why does it knock out your general exception of use of the automobile? It does not knock out the general exception because, in the Hanley case, it just happened to be the situs of the action. It had nothing to do with the occurrence. In this case, the trailer being misparked to the loading chute had everything to do with the occurrence. It was actually part of the occurrence. The ice cream truck was there, made it available so the foul ball could deflect off it. That's right. That's right. It just happened to be the situs of the action, as the court recorded.  I mean, he's basically trying to use the trailer as kind of a means of forcing the cattle into the chute. The misparking of it is actually what led to the escape of the cows or the heifer that caused the accident. So that's part of the unloading process. And the trailer's failure to be parked properly created that. It's part of the incident. So what you're saying is the ice cream truck was simply a scenario of the accident. Here, the actions of Kelly was causative of the accident. That's true. And the trailer's positioning was part of that cause. In fact, in the Hanley case, they said it's the situs, I think. Wasn't the ice cream truck supposed to be someplace else? Not necessarily. And it was just stationary. It's not. It wasn't supposed to be on the third basement. Okay. I appreciate your time and thoughtful consideration as we urge a reversal. It was well briefed and well argued. Thank you very much. I appreciate that. The case, well, here's the last case for argument, which is Claymakers v. ESPN.
judges: Schroeder, Tallman, Bea